Morning. Welcome to the Ninth Circuit. We will hear the cases in the order in which they are listed on the calendar. We have several cases submitted on the briefs, and the first case for argument is James Lee Construction v. Government Employees Insurance Company. Mr. McGarvey. Thank you, Your Honor. I understand I have 15 minutes. I would like to reserve three of that for my rebuttal argument. Just keep an eye on the clock. May it please the Court, I wish to urge three points of emphasis this morning. First, the must be clarified and conformed to at least nine Montana Supreme Court cases holding that declaratory relief is available to both first-party and third-party plaintiffs to declare the meaning and application of the insurer's duties, including under contract, under Montana's complete whole rule, and, indeed, under the UTPA itself. The problem is that a broad statement in the Bateman case that is clearly directed at a specific overreach by the Bateman plaintiff is being argued to broadly cover all insurance claimants in all cases. It is happening in case after case where the Montana federal courts are trying to follow what the Bateman decision says, notwithstanding that it's a memorandum opinion. The conflict is described by the Montana federal court Judge Dana Christensen in the case of Reeves v. Safeco, 2020, Westlaw, 4933620. Judge Christensen ruled that the contention that Bateman precludes all deck actions under the UTPA is, quote, a conclusion that is contrary to the established practice of the Montana Supreme Court. Judge Christensen certified the question to the Montana Supreme Court in the Reeves case, but that case settled, and so we still have this problem, and I urge this court to clarify that decision not only for this case but for all the other cases in Montana where the federal courts are going askew of what the state courts are doing. But isn't Bateman a memorandum disposition? It's a memorandum decision. So it's not binding on this court? It's not binding on this court. It's not binding on the federal district courts. They are very concerned about it, and they're trying to conform to it. Mike, I want to clarify one thing, make sure I understand the foundation before you continue your argument. So as I understand your brief, everything is framed as request for declaratory judgment, correct? That's correct. And one of my first reactions to that is that that's just a different way of repackaging a damages claim. So I'm trying to understand what a declaratory judgment order would mean for you when the claim has already been processed, for example. Yes, and I'm going to address that in greater detail later in my argument. It might be good to address it now. Of course, Your Honor. Because to me, there's an argument about conversion, et cetera, but everything is framed as a declaratory judgment strategically, so I'm sure. So I want to understand why. So this is precisely the argument that was made in the Ferguson case, is that what we had done, because we brought that case as well, is we had repackaged a damages case as a declaratory judgments case. And if it's a damages case, it's not suitable for class certification under Rule 23b-2, went up to the Montana Supreme Court. The Montana Supreme Court recognized we're not after damages. There is no question about how much is owed to any of the individuals to the lease. What we're asking is for a ruling that can be applied by the court to say what is the meaning of the made whole rule and how must the insurer conform its subrogation program to that meaning. And that's precisely what happened when the Montana Supreme Court recognized this is not a damages case. It's not a case repackaged. It's truly serving the purposes of declaratory relief. We went back to the lower court. The lower court issued its declaratory ruling saying the insurer must find out what the insured's losses are before it can subrogate. All of this subrogation that's been taken without conforming to that must be sequestered and these procedures must be followed. That ruling was issued and it was applied. No damages were sought and no damages were obtained. But full relief was obtained because it was really a question of how do you make this subrogation program conform to the law. It's truly a deck action appropriate form of relief. Just to clarify your answer to Judge McEwen's first question, you're not asserting a contract claim that's independent of a claim for declaratory relief. It's all declaratory relief. Is that right? It's declaratory relief but it arises in the context of an equitable made whole rule and a contractual subrogation right and a limitation to that contract subrogation right. So it truly is a declaration of the meaning of the contract right and a meaning of the equitable made whole rule. It's a declaration. How do you reconcile that with the language of the UTPA provision that you may bring an action against the insurer for breach of the contract for fraud or pursuant to this section but not under any other theory or cause of action? Why isn't a claim for declaratory relief? I mean, it's not an action for breach of contract. It's not an action for fraud. It's a different theory. Yes. So how is that? There's three reasons, Your Honor. First of all, the Bateman Court in the Ninth Circuit is not saying that when enacting the UTPA that the state legislature attempted to and preventing courts from exercising their declaratory relief power. It's not saying that, indeed, there is nothing in the statute that says anything about it. What does the statute say? It says when you're bringing an action for bad faith in Montana, instead of bringing it under the old common law theories, it's statutorily defined. This is the theory you can bring. You can bring a contract claim. You can bring a fraud claim. But a bad faith claim has to be brought under this statute if you're bringing a claim for damages for the tort. If you're not bringing a claim for damages for the tort or if you're seeking declaration of the meaning of the statute itself, declaratory relief is available. Well, just as to the Lees and the construction company, and sometimes they're merged here, is the remaining outstanding money that you would like out of this somewhere in the neighborhood of $1,000? That's what they are holding out of my client's claim. So the answer to my question is yes, you would like $1,000 plus out of this for your client's claim. We would like them to follow the law and find out what those losses are and make sure they're made whole for those losses. That's legal mumbo-jumbo. We're talking about real life. As laid out in the briefs, it would appear that if you add up all the numbers for what your clients feel they weren't reimbursed for, that it's around $1,000 or $1,100. Is that right? That's the case, Your Honor. So it's not that you want the insurance company to figure out what they owe and they did this. You want somebody to pay this money. That's the bottom line. My clients are hurt to the tune of $1,000. That's all I wanted to understand. But the relief we're seeking is that that money, all of the money that they've taken in subrogation, be sequestered until they conform to the rule. It's true for every one of the claimants and it was true for Ferguson and for every one of the plaintiffs in the Ferguson case. They all are left with out-of-pocket monies and attorney's fees, but they weren't seeking damages. They were seeking a procedure that would make sure they were made whole before the insurer went out and kept holding their money or went out and did it again on these same insurance policies. And so you're saying that GEICO owns you the $1,100, let's say. It's sequestered, but in the end, it's in a fund that they control. Is that what you're saying? I'm having difficulty following you here. So GEICO is entitled to subrogate. The question is how much. And so there might be a dispute about what is an actual loss and whether it's been uncovered. But we're saying they're not even doing that. They're not even attempting to quantify, not even asking what are your out-of-pocket losses. They're not even investigating what are your attorney's fees. And so the point isn't here's a specific set of money. We don't know how much they're actually entitled to subrogation until they do that procedure. Specifically for the lease, this is how we calculate it, but the relief we're asking for is that they go back and do it. Whether they come up with $1,000 or not, that they do the procedure. And this is a... And why do you care what the procedure is if they get their money? I mean, as a practical matter. Let's say they walk out of court today and write you a check. You still want the procedure clarified? Well, it's a problem that repeats itself over and over again. This is... But for the lease, if they got their money, if they were made whole to the level that we contend they would make whole, notwithstanding that they didn't follow the made whole rule, the lease would no longer have standing. They would be satisfied. And why can you not recover the $1,100 from the at-fault driver or his insurance? Because when GEICO prematurely subrogated, they depleted the third party's adverse carriers coverage for my client's tort client. So when they went to get the money, there was only a little bit left. They exhausted that, and in the process of doing that, they got attorney's fees. That's precisely what the made whole rule is directed toward. And without that insurance coverage, is the third party now judgment-proof? I mean, because whether or not he has insurance, he may have other assets, right? Yeah, we're getting outside of the record, Your Honor, but we may presume that an insured needs to have his adverse coverage before it's going to be. The reason for the made whole rule is having paid for this insurance, my client shouldn't have to deal with that kind of problem, and having to chase an uninsured claimant or a limited insured claimant, or even an insured claimant, and incur attorney's fees in doing so. The made whole rule says exactly that. Because the insurance company's been paid, if you have to go get it from somewhere else, you've got attorney's fees, and the insurer must make sure those are reimbursed before it can subrogate. And the rationale is this. Somebody is out of pocket. Somebody loses money. If the Montana, unique Montana made whole rule is applied, the insured doesn't suffer the loss. What happened here? SAFECO paid, or GEICO paid this money, GEICO got every penny of it back. My insured, my claimant, did not get all of their injuries paid for, and they have attorney's fees. They are out of pocket. That is precisely what the Supreme Court has repeatedly said is the rationale. When, and I'm quoting from Scalgi, when the sum recovered by the insured from the tort fees is less than the total loss, and thus either the insured or the insurer must to some extent go unpaid, the loss should be borne by the insurer, for that is a risk the insured has paid to assume. And specifically with respect to attorney's fees, again, in the detain case, to do otherwise would mean that the insured loses money, money paid for litigation of excessive damages, going after the adverse carrier or the uninsured tort fees. You had wanted to reserve some time. Yes. I just want to finish this quote. Plus money paid as premiums to insurer, and the insurer gains by such a financial arrangement, the insurer has received premiums, plus has been fully recompensed for money it paid to the insured. In Scalgi, we determined that such a state affairs is akin to unjust enrichment and is not equitable. We simply seek a declaratory judgment that says this rule of law must be applied before they have any right to hold this money taken from the lees or the other insureds. I'll reserve the balance of my time. Mr. Jacobson. Good morning, Your Honors, and may it please the Court, Andrew Jacobs and Sheila Carmody for the defendant, Apelli Geico. First, I think the whole argument really starts and should pivot on the passage of the statute, Judge Miller, that you quoted. It was the first thing I planned to discuss. I mean, they can bring a breach of contract action, like you're discussing with counsel, but they cannot bring one under any other theory or cause of action, and that's what they've done. This is any other. It's not just the one, as he wishes it to be. Any other is broad and categorical. They can't bring something else, and that is exactly what they've done. As far as preemption goes, they told the district court that the latest and greatest in terms of preemption under this statute was this Johnson case, which they said was basically their case. They said it's a wrongful subrogation case, and we're going to find out in Johnson what the real answer is. Now, the Montana Supreme Court could have just said jurisdiction denied. Sometimes courts with discretionary jurisdiction just say denied. They don't explain themselves. The Montana Supreme Court explained itself, and it said we're denying jurisdiction in part because the party situated precisely like the Lees had failed to demonstrate any legal error in the dismissal of their preempted conversion claim, and that's because the UTPA does have that broad preemption of claims wherein substance you are seeking damages. And — And Johnson is also an unpublished decision, is it not? Johnson, I believe it is. I guess my question is, what dignity do we give to the Johnson opinion by the Supreme Court of Montana? Well, I think when we cite orders in matters for their persuasive authority, like their unpublished disposition, I think we look to it for the degree of suasion we should find in it. And when both parties are telling the court that this is something that logically might control the subject matter, I think that we all agree it's probably fairly persuasive. It's also the last thing we know from the Montana Supreme Court. So while they didn't bother publishing it, it remains unpublished in Pacific Reporter, the logic is consistent with the other decisions before the court today. So Johnson is a good indicator. We agree with them in their motion to dismiss brief that it's a good leading indicator. But basically, their case exists on the horns of a dilemma that can't be resolved. I mean, counsel properly admitted that there is not really a breach of contract claim here. However, there must be a breach of contract claim here for the claim to have life under 242, Section 3. I mean, that's the existential problem with their case. They're trying to force a square peg into a round hole so that they can have a class action so they don't want non-uniform questions about damages. They just want a uniform legal question. But whether it's published or not, and it's not, you know, Bateman is persuasive. It was just another different practice. And it was in that case, it was the defense within limits clause. And they wanted to say, oh, that particular way an insurance company is behaving, interpreting the contract is illegal. And this court said, albeit unpublished, you know, we get that. This is not a remedy available under the UTPA. And I'm not sure why counsel is saying the District of Montana is concerned. We cited, I think, four different cases where courts in the District of Montana have followed the logic and reasoning of Bateman. It seems to be persuasive. Counsel mentioned a case called Reeves by Judge Christensen, who's a great district judge. I looked. It's not in the table of contents here, so I don't know about that case. I don't see concern. I see a district court that's uniformly following a logical and persuasive rule that emanates from clear statutory language. So where he's acknowledged that everything on appeal relates to a declaratory judgment, some of which loops in a contract claim. So what's your response in terms of his, the standing to be able to bring a declaratory judgment claim on the issues that he's laid out? It's preempted. You can't bring a declaratory judgment action on the issues presented because the issues presented are in substance a damage claim. He wants his $1,100. He wants a class of people who are similarly situated, who have other $1,100, $900, $400 they want. And that claim, his theory of it sort of recurs back through kind of a loop in logic to that our contract doesn't permit us to engage in the practice, so the whole thing must be illegal. But if you look at Van Orden, which is one of these controlling Montana Supreme Court cases that counsel refers us to, Van Orden is basically our case. It was a case where there was no issue that the actually insured loss, not this extra thing that they would like in this case, but the property damage was completely paid as an element of the claim. In Van Orden, the Montana Supreme Court, thankfully in a published case, said this is a situation where it has actually been fully resolved, the property damage claim. And they plead in paragraph 9 of their complaint, I think it's ER 22, paragraph 9 anyhow, of the third amended complaint. They say, we have no quarrel with GEICO's adjustment in handling of the claim for the covered property loss. That maps perfectly, not just to the facts, but even really to the language of Van Orden. It's paragraph 17 of Van Orden right in front of me. So I mean, that really robs them of standing here because the Montana Supreme Court is basically saying, subrogation is okay with us. You have to completely pay. It's important. You have to completely pay the element of the covered loss, which is here the property damage, right? But we did that. They've admitted that in paragraph 9 of their complaint. Now, what about the so-called 1100 more or less? That's something which is not an element of covered loss because he's saying that even though we discharged fully and well our obligation to pay on the property loss, the fact that we then subrogated when the contract says three times we can and Van Orden says we can and Van Orden says the Montana legislature says we can. He's saying, he's claiming, well, that messed up my ability to collaterally get at $1100. And that's because they then paid GEICO back, correct? That's his assertion. And therefore, it decreases the total coverage ability of the third party insurance. Yes, and I would say first that that's completely against all the litany I just threw down of Van Orden and the statute and the amendment to the statute to allow subrogation. But I think it also goes back to the point of Judge Miller's colloquy with counsel, which is just, it's not like they're judgment-proof for the $1000. It's not like you've forever and for all time destroyed the ability to seek $1000 from somebody. So we don't think that that's within the scope of the insured obligation. And they were made whole, paragraph 9, they were made whole for the covered loss. And subrogation was addressed by the Montana legislature. And Van Orden explains that, that in 1997, the court, excuse me, the legislature wanted to make sure that you could subrogate responsibly. And that means what it says in Van Orden and what is our practice in Montana here, which is we really, really, really have to pay that covered property loss. That's our duty. It's in the contract. Our contract says, pages ER 83, 99, 101, that we subrogate. But we subrogate consistent with the command of Van Orden and the command of the Montana legislature that we do so only by first completely paying what we do contractually owe. And I think it's the most important thing, is the statute, you start with the statute and you finish with Van Orden and that we paid the covered loss. And happy to address any other questions, but that's our position in the court, Your Honors. Did this case ever go to the mediation program? No, it did not go up. Thank you. Great. Thank you, Counsel. Thank you very much, Your Honors. Thank you. Mr. McGarvey, you have just under a minute. Thank you, Your Honor. First of all, this argument from Van Orden puts the cart before the horse. This is precisely the controversy. Does Van Orden change the made whole rule and authorize this? It's our contention it does not. We need a declaratory ruling that says it does not. I would point out that in the Van Orden case, the quote I gave you from Scalgi is repeated and endorsed. This is a misapplication of Van Orden. It is precisely the issue for which we need declaratory relief. Second, this reference to the Johnson case and this use of the Bateman case, Your Honor, I ask the court to look carefully at the Ferguson case. The Montana Supreme Court has looked at this identical case and I quote, the efficient remedy of class-wide declaratory relief is appropriate. That's the law of Montana. Finally, I would cite the court to the Safeco v. Illinois case, which captures why this preemption argument is false. It's because the statute only applies to the theories and causes of action. It does not apply to the form of relief. And in the Safeco v. Illinois case, the Montana Supreme Court said this specifically. The district court did not determine that Safeco violated UTPA or acted in bad faith or that the ordered payment of advanced medical expenses constitutes money judgment for damages in the ordinary sense. To the contrary, the district court merely removed all uncertainty and controversy of the issue of when the inevitable policy proceeds are due under the UTPA. We're following that exactly.
judges: O'SCANNLAIN, McKEOWN, MILLER